```
               IN THE UNITED STATES DISTRICT COURT
              FOR THE NORTHERN DISTRICT OF INDIANA
                        HAMMOND DIVISION


STEVENER GASKIN, et al.,        )
                                )
Plaintiffs,                     )
                                )
vs.                             )    NO. 2:05-CV-303
                                )
SHARP ELECTRONICS               )
CORPORATION,                    )
                                )
Defendant.                      )
```

## OPINION AND ORDER

This matter is before the Court on Defendant Sharp Electronics Corporation's Motion to Strike Testimony From the April 25, 2007 Evidentiary Hearing, filed by Defendant, Sharp Electronics Corporation, on June 6, 2007. For the reasons set forth below, the motion is **DENIED**.

### INTRODUCTION

On February 1, 2007, Defendant, Sharp Electronics Corporation, moved to bar the testimony of two experts retained by Plaintiff - Dennis Dyl and Steven Shand. This Court held two evidentiary hearings on this motion - one on April 25, 2007, and the second hearing on June 12, 2007. Dyl and Shand testified at the first hearing held on April 25, 2007. Sharp claims that during the April

25, 2007 hearing, Dyl and Shand provided testimony relating to facts and opinions that were not properly disclosed to Sharp pursuant to Federal Rule of Civil Procedure 26(a)(2).  Furthermore, Sharp urges that as a sanction for the failure to disclose, certain testimony should be stricken pursuant to Rule 37(c)(1).

In response, Plaintiff contends that Dyl and Shand's opinions were properly disclosed pursuant to Rule 26(a)(2), or their testimony was supplemented through the discovery process as required by Rule 26(e)(1).  Plaintiff also contends that even if it committed discovery violations, they are not egregious, Sharp has not been prejudiced, and striking the testimony is too severe of a punishment.

**DISCUSSION**

In general, motions to strike are disfavored.  *Williams v. Jader Fuel Co.*, 944 F.2d 1388, 1400 (7th Cir. 1991).  This is because these motions can be abused to serve merely as tactical tools of annoyance and delay to the opposing party and also waste judicial resources.

Rule 26(a)(2)(B) requires experts to submit a written report that "contain[s] a complete statement of all opinions to be expressed and the basis and reasons therefor; [and] the data or other information considered by the witness in forming the opinions. . . ."  Fed. R. Civ. P. 26(a)(2)(B).  "The test of a

report is whether it was sufficiently complete, detailed and in compliance with the Rules so that surprise is eliminated, unnecessary depositions are avoided, and costs are reduced." *Reed v. Binder*, 165 F.R.D. 424, 429 (D.N.J. 1996).

Additionally, a party has a duty to supplement "if the party learns that in some material respect the information disclosed is incomplete or incorrect and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1). Supplementation "during the discovery process" includes document production, written discovery responses and deposition testimony. *Sullivan v. Glock, Inc.*, 175 F.R.D. 497, 502 (D. Md. 1997). With respect to an expert report, the duty to supplement "extends both to information contained in the report and to information provided through a deposition of the expert, and any additions or other changes to this information shall be disclosed by the time the party's disclosures under Rule 26(a)(3) are due." Fed. R. Civ. P. 26(e)(1).

These provisions of Rule 26 can be enforced by Rule 37 which provides in pertinent part that "[a] party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1), or to amend a prior response to discovery as required by Rule 26(e)(2), is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a

3

motion any witness or information not so disclosed." Fed. R. Civ. 37(c)(1). In determining whether harm has been caused by the failure to disclose, the following factors should guide the district court's discretion: (1) the prejudice or surprise to the party against whom it is offered; (2) the ability to cure; (3) the likelihood of disruption to the trial; (4) and the bad faith or willfulness involved in not disclosing the evidence at an earlier date. *David v. Caterpiller, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003). In summary, "[a]s a rule of thumb, if the failure to comply with the required disclosure involves a material aspect of the expert's testimony, and if the opposing party can show prejudice in connection with the lack of disclosure, then the opinion of the expert should be excluded, in whole or in part, at trial." *Sullivan*, 175 F.R.D. at 503.

In this case, the Court finds that Plaintiff did indeed sufficiently disclose its experts' testimony, or otherwise supplemented or made known additional information during the discovery process. Moreover, Sharp has pointed to no prejudice whatsoever suffered by the alleged nondisclosures. The trial in this case is set for November 13, 2007, still months away.

### The Alleged Nondisclosures

1. "Flashover"

Sharp complains that Shand testified for the first time at the

4

April 25, 2007 hearing, that the bedroom had not "flashed over." However, Shand discussed the burn patterns in the room in both his report and during his deposition. Moreover, when asked if the "whole room [was] engulfed" (which is essentially the definition of a flashover), Shand answered that he could still observe reliable burn patterns - an answer which ostensibly means that a flashover did not occur. (Shand Dep., p. 113.) Finally, Sharp's own experts have addressed the concept of "flashover" in their reports and depositions, so Sharp cannot be surprised or prejudiced by Shand's rebuttal testimony.

2.  <u>Deposition of Mary Gaskin</u>

Sharp complains that Dyl first testified during the April 25, 2007 hearing, that he reviewed the deposition testimony of Mary Gaskin in arriving at his opinions in the case, and her testimony was "extremely significant." (Transcript from April 25, 2007 hearing, hereinafter "Daubert Hearing Tr.", p. 98.) However, Dyl testified during his deposition that he reviewed Mary Gaskin's testimony, and when asked "what was significant to you about that description of that fire?" Dyl answered, "[s]he saw the fire at the TV set." (Dyl Dep., p. 7-8.) Obviously, Sharp was aware that Dyl reviewed Mary Gaskin's testimony, and that he thought it was significant. Dyl's testimony at the April 25, 2007 hearing does not materially change Dyl's opinion. Moreover, Sharp has suffered

5

no prejudice from learning during the hearing that Mary Gaskin's testimony was "extremely significant" to Dyl.

3.  <u>Distress</u>

During the April 25, 2007 hearing, Sharp contends that Dyl defined the "distress" that he allegedly viewed in the television remains for the first time as "areas where the components are displaced, the components are melted, the soldered joints are melted and resolidified giving them a globular appearance." (Daubert Hearing Tr., p. 104.)  The Court finds that this definition has been previously disclosed to Sharp.  During his deposition, when asked "[w]hat do you mean by distress?" Dyl answered, "[t]his capacitor.  It's showing deformation.  See how it's sort of elliptical and drooly here?  The components are not well-defined in there."  (Dyl Dep., pp. 132-33.)  Substantively, "drooly" seems to be the same as the "components are melted," or have a "globular appearance."  Additionally, Dyl observed in his report that "[a] number of capacitors showed evidence of deformation of the tops of the cans." (Dyl Report, p. 2.)  Dyl's testimony at the hearing is thus consistent with his deposition and report, and offers nothing materially different.  Finally, Sharp has not shown this Court any evidence of how it is has been harmed by this allegedly new testimony.

4.   <u>Elimination of Other Possible Sources</u>

Sharp also urges the Court to strike Dyl's testimony regarding other possible sources of the fire (other than the television) that Dyl discussed during the April 25, 2007 hearing.  At the hearing, Dyl testified that he surveyed photographs of the fire scene and eliminated other possible sources, including the light switch, two electrical receptacles, and the ceiling light.  (Daubert Hearing Tr., pp. 119-20.)  Sharp argues this is inconsistent with Dyl's deposition testimony that he is not an origin expert or fire investigator, but rather considered himself an expert of what may have occurred inside the television.  (Dyl Dep., pp. 65-66.)  This Court disagrees.  First, Dyl stated in his report that he formed an opinion about the fire scene, and he included mention of the light switch, two electrical receptacles, and the ceiling light.  (Dyl Report, pp. 2-3.)  Second, even if Dyl concedes that he is not an expert with regard to fire investigation and origin outside of the television, that does not mean that he cannot opine that other electrical receptacles did not cause the fire.

5.   <u>Dr. Barbrauskas</u>

Sharp contends that it was improper during the April 25, 2007 hearing for Dyl to defend the qualifications of Dr. Barbrauskas, an author of an Internet article upon which Dyl relied.  Dyl referred to the Babrauskas article in his deposition and explained how the

7

article aided in forming his opinion. (Dyl Dep., pp. 30-31.) Thus, Sharp cannot be surprised by Dyl's reliance on the article, and Sharp has had, and continues to have, adequate time to equally evaluate the qualifications of Dr. Babrauskas.

6.   Recall

Sharp complains that Dyl testified at the hearing that a recall notice of a different model Sharp television provided support for his opinion that the television could ignite combustibles, contrary to Dyl's deposition testimony that the recall was not relevant to his opinions. Dyl recorded in his report that he reviewed the Consumer Product Safety Commission recall data base. (Dyl Report, p. 1.) Dyl testified during his deposition that the specific recall was not relevant to the case because the recall itself did not cause the fire in the case, and the recall was on a different model television. However, the Court does not think this is inconsistent with Dyl's testimony at the April 25, 2007 hearing, finding the recall was generally significant because it supported the idea that the polymer cabinet could be subject to fire in some circumstances. (Daubert Hearing Tr., pp. 125-26.) Regardless, Sharp has failed to show how it suffered any prejudice from the alleged lack of disclosure.

7.   Scientific Certainty

Sharp complains that although Dyl disclosed that it was his *hypothesis* that the television started the fire, Dyl testified for the first time during the hearing that he believed the television set caused the ignition of the fire to *a reasonable degree of certainty* in his profession. (Daubert Hearing Tr., p. 133.) Plaintiff contends that Sharp has confused two distinct opinions of Dyl: (1) his hypothesis is that the fire started within the television at a poor connection on the CRT board; and (2) the television generally caused the fire, which Dyl can testify to with a reasonable degree of scientific certainty. The Court does not believe that Dyl's testimony at the hearing is materially different from the opinions previously disclosed by him. Moreover, once again, Sharp has failed to show any prejudice.

8. Fuse

Lastly, Sharp complains that at the hearing, Dyl claimed to have seen the fuse in the x-rays of the CRT board, as opposed to his deposition, when Dyl stated that the fuse was missing. This testimony is not inconsistent. As Dyl testified at the hearing, he could see the fuse end caps in an x-ray, but the end caps are currently missing from the fuse. (Daubert Hearing Tr., p. 127.)

CONCLUSION

For the reasons set forth above, Defendant Sharp Electronics

9

Corporation's Motion to Strike Testimony From the April 25, 2007 Evidentiary Hearing, is **DENIED**.

**DATED: July 30, 2007**                              **/s/ RUDY LOZANO, Judge**
                                                     **United States District Court**