IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| STEVENER GASKIN, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | NO. 2:05-CV-303 |
| | ) | |
| SHARP ELECTRONICS | ) | |
| CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

This matter is before the Court on Defendant Sharp Electronics Corporation's Motion for Summary Judgment Pursuant to Fed. R. Civ. P. 56 and Local Rules 7.1 and 56.1, filed by Defendant, Sharp Electronics Corporation, on July 2, 2007 [docket entry 81]. For the reasons set forth below, the motion is **GRANTED IN PART** and **DENIED IN PART**. Defendant's motion for summary judgment is **GRANTED** on the issues of design defect and failure to warn, and the Clerk is **ORDERED** to **DISMISS WITH PREJUDICE** these claims from the complaint. The motion is **DENIED** on the issue of manufacturing defect, and this claim **REMAINS PENDING**.

BACKGROUND

This case arises out of a fire that occurred the night of March 2, 2004. Plaintiff, Mary Gaskin, rented a house in Gary,

Indiana, in which her mother, Lee Ester Gaskin, also resided.  Lee
Ester Gaskin was killed in the fire.  Plaintiffs claim that a 19-
inch Sharp television, Model 19 RM 100, caught fire in Lee Ester
Gaskin's bedroom, and caused her death.  Plaintiffs filed their
complaint against Defendant, Sharp Electronics Corporation
("Sharp") on May 18, 2005, alleging that Sharp is strictly liable
for designing, manufacturing, and placing into the stream of
commerce the Sharp television in an unreasonably dangerous and/or
defective condition so as to cause the fire (Compl. ¶ 10), and that
Sharp was negligent in the design, manufacture, and marketing of
the television.  (Compl. ¶ 11.)

On August 31, 2007, this Court entered an order on Defendant's
motion to bar expert testimony, barring the testimony of
Plaintiffs' electrical engineering expert, Dennis Dyl, but allowing
the testimony of Plaintiffs' cause and origin expert, Steven Shand.
On September 18, 2007, this Court clarified its previous opinion by
ruling that it would not per se bar the testimony of Dyl regarding
general principles, background testimony, or Dyl's observations
during his data collection; however, such testimony would only be
allowed into evidence at trial if Plaintiffs can show, depending
upon all of the evidence, that it is relevant, and Plaintiffs must
tie up the proposed evidence so that it fits the fact of the case.
Because the Court does not know what Plaintiffs will be able to
establish at trial, for the purpose of this motion, Dyl's proposed

2

testimony must be presumed inadmissible in its entirety.

Undisputed Facts

The last time Plaintiff Mary Gaskin saw her 74 year old mother, Lee Ester Gaskin was awake and watching television in her bedroom at around 10:00 p.m. on March 2, 2004. Mary was awakened just after midnight due to the fire. She went to her mother's room and saw sparks and fire coming from the area of the television stand. (M. Gaskin Dep., pp. 167-68.) The flames started about waist high, shot upward, and "probably could have reached the ceiling." (M. Gaskin Dep., p. 174.) Mary also thought she smelled rubber. (M. Gaskin Dep., pp. 175-76.) The flames were around 2-3 inches from her mother. (M. Gaskin Dep., p. 178.) Barefoot, when Mary stepped on the floor of her mother's room, it was hot. (M. Gaskin Dep., pp. 166-67.) Mary then went to the kitchen to call 911 and tried to return to her mother's room approximately six minutes later, but she had to turn away because the smoke was too strong. (M. Gaskin Dep., pp. 149, 179-181.) Lee Ester Gaskin perished in the fire.

The subject television, Sharp Model 19 RM 100, was located in decedent Lee Ester Gaskin's bedroom, along the east wall, across from her bed. (M. Gaskin Dep., pp. 86-88.) It sat on a television stand. (M. Gaskin Dep., pp. 86-87.) Lee Ester Gaskin did not smoke, and she did not have any candles in the room. (S. Gaskin

Dep., pp. 38-40; M. Gaskin Dep., p. 111.) Mary Gaskin testified that the television was the only electrical appliance in the room, and the only item plugged into an electrical outlet. (M. Gaskin Dep., p. 107.) The television was largely destroyed in the fire, and the remains measured only about one foot high. (Shand Dep., p. 134.)

The television was purchased by Stevener Gaskin from Best Buy on December 22 or 23, 2003, as a Christmas present for his mother, Lee Ester. (M. Gaskin Dep., pp. 122-23; S. Gaskin Dep., p. 69.) However, the television was not removed from the box until around January 31 or February 1, 2004, a little over a month before the fire. (M. Gaskin Dep., p. 123; S. Gaskin Dep., p. 60.) When the television was opened, it was wrapped in plastic and had Styrofoam packing squares in place. (M. Gaskin Dep., p. 129.) Plaintiffs never dropped the television before the fire, they never had any problem with it, and it was never repaired or serviced. (S. Gaskin Dep., pp. 70, 123-24; M. Gaskin Dep., p. 128.)

Plaintiffs disclosed two liability experts: Steven Shand and Dennis Dyl. As mentioned earlier, this Court struck the expert testimony of Dennis Dyl (who opined that a poor pin connection on the CRT board inside the television resulted in high electrical resistance which generated heat and caused the fire), because it did not comport with the reliability requirements of *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592 (1993). Thus

4

Plaintiffs are left with the expert testimony of Steven Shand, a fire cause and origin expert.  Originally, Shand investigated the fire on behalf of the State Farm Insurance Company, at the request of the property owner.  Shand is a certified fire investigator and fire and explosion investigator, and the co-owner of Shand Forensic Investigations, Inc.  Shand investigated the scene on March 4, 2004, but by the time he arrived at the scene, it had been altered - it was partially excavated, debris had been thrown out of the window, and there were missing items, including the subject television.  (Shand Dep., pp. 30-34.) As a result of his detailed investigation of burn patterns, Shand reached the following summary in his cause and origin analysis:

> Based on the burn pattern analysis, the degree of destruction, and the evidence examined, it is our opinion that the fire originated to the north of a television stand located adjacent to the east wall in the northwest corner bedroom.  Fixed branch circuit wiring within the room was examined and eliminated as the cause of the fire.  Because of alterations to the scene and the inability to examine all evidence removed from the scene, a definitive cause could not be determined.

(Shand's Report, p. 4.)  Shand also concluded that "[a] television stand located in the area of fire origin had nearly been consumed and a "V" pattern on the east wall established that the fire had burned upward and outward from the stand." (Shand's Report, p. 4.)

Shand stated during his deposition that he is not qualified to render any opinions about the television, therefore, he does not

have an opinion regarding whether the television was the cause of the fire. (Shand Dep., pp. 15, 52, 207-09.) During his analysis of burn patterns and observations made at the scene, Shand concluded that the fire did not start on the bed, and he eliminated the 2 receptacle outlets, the wall light switch, the overhead light, the closet, and the electrical wiring in the wall as possible sources of the fire. (Shand Dep., pp. 100, 128, 166, 178, 181-84; *see also* August 31, 2007 Order, pp. 12-13.) Shand testified that, although he has no opinion as to whether the television started the fire because he "[didn't] know the first thing about a television," "to the best of [his] knowledge, [the television] is the only ignition source that hasn't been eliminated." (Shand Dep., pp. 207-08.) From his examination of the wall receptacle, Shand believes only one receptacle had something plugged into it at the time of the fire, but could not rule out the possibility that there was a multi-prong adapter plugged into the receptacle. (Shand Dep., pp. 152-53.)


DISCUSSION

The standards that generally govern summary judgment motions are familiar. Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper only if it is demonstrated that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See*

*Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  In other words, the record must reveal that no reasonable jury could find for the nonmovant. *Karazanos v. Navistar Int'l Transp. Corp.*, 948 F.2d 332, 335 (7th Cir. 1991); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986).  In deciding a motion for summary judgment, a court must view all facts in the light most favorable to the nonmovant. *Anderson*, 477 U.S. at 255; *NUCOR Corp. v. Aceros Y Maquilas De Occidente*, 28 F.3d 572, 583 (7th Cir. 1994).

The burden is upon the movant to identify those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits," if any, that the movant believes "demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323.  Once the movant has met this burden, the nonmovant may not rest upon mere allegations but "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *Becker v. Tenenbaum-Hill Assocs., Inc.*, 914 F.2d 107, 110 (7th Cir. 1990); *Schroeder v. Lufthansa German Airlines*, 875 F.2d 613, 620 (7th Cir. 1989). "Whether a fact is material depends on the substantive law underlying a particular claim and 'only disputes over facts that *might affect the outcome* of the suit under governing law will properly preclude the entry of summary judgment.'"  *Walter v. Fiorenzo*, 840 F.2d 427, 434 (7th Cir. 1988) (emphasis in original)

7

(citing *Anderson*, 477 U.S. at 248).

"[A] party who bears the burden of proof on a particular issue may not rest on its pleading, but must affirmatively demonstrate, by specific factual allegations, that there is a *genuine* issue of material fact which requires trial." *Beard v. Whitley County REMC*, 840 F.2d 405, 410 (7th Cir. 1988) (emphasis in original); *see also Hickey v. A.E. Staley Mfg.*, 995 F.2d 1385, 1391 (7th Cir. 1993). Therefore, if a party fails to establish the existence of an essential element on which the party bears the burden of proof at trial, summary judgment will be appropriate.  In this situation, there can be "'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323.

<u>Design Defect and Failure to Warn</u>

To establish a prima facie case under a design defect theory, Plaintiffs must establish: (1) the manufacturer placed into the stream of commerce a defectively designed, unreasonably dangerous product; (2) a feasible safer alternative product design exited; and (3) the product defect proximately caused the plaintiff's injury. *Barnard v. Saturn Corp.*, 790 N.E.2d 1023, 1032 (Ind. Ct. App. 2003).  Sharp argues that Plaintiffs have failed to establish any of these three elements.  Regarding the theory of negligent

failure to provide adequate warnings, a product is defective if the seller fails to: (1) properly package or label the product to give reasonable warnings of danger about the product; or (2) give reasonably complete instructions on proper use of the product; when the seller, by exercising reasonable diligence, could have made such warnings or instructions available to the user or consumer. Ind. Code § 34-20-4-2.  Sharp argues that because Plaintiffs have failed to show a defective design, there is no duty to warn.  *See American Optical Co. v. Weidenhamer*, 457 N.E.2d 181, 187 (Ind. 1983) ("Absent proof of a dangerous instrumentality, or proof of a defect or improper design making an otherwise harmless instrument dangerous, there is no duty to warn of product connected dangers."); *Rogers v. Ford Motor Co.*, 952 F. Supp. 606, 617 (N.D. Ind. 1997) (explaining "it is axiomatic that there can be no duty to warn where no design defect has been shown").

In Plaintiffs' response to the instant summary judgment motion, Plaintiffs completely fail to respond to Sharp's arguments regarding design defect and failure to warn.  Plaintiffs' arguments on these points are therefore waived.  *See E.E.O.C. v. U.S. Bell*, No. 2:03-CV 237-PRC, 2005 WL 1683979, at *15 (N.D. Ind. Jul. 19, 2005) (holding issues raised in summary judgment motion that non-moving party does not properly respond to are deemed waived; *see also Palmer v. Marion County*, 327 F.3d 588, 597-98 (7th Cir. 2003) (holding arguments not presented to the court in response to a

summary judgment motion are waived).  Accordingly, the Court grants summary judgment in favor of Sharp on the claims of design defect and failure to adequately warn.


Manufacturing Defect

To establish a prima facie case of strict liability for a manufacturing defect, the plaintiff must show that: (1) the product is defective and unreasonably dangerous, (2) the defective condition existed at the time the product left the defendant's control, and (3) the defective condition is the proximate cause of the plaintiff's injuries.  *Natural Gas Odorizing, Inc. v. Downs*, 685 N.E.2d 155, 160 (Ind. Ct. App. 1997).  A product is defective when it is in a condition not contemplated by the expected users, and is unreasonably dangerous when used properly.  Ind. Code § 34-20-4-1.  The plaintiff has the burden of proving that the product was in a defective condition that rendered it unreasonably dangerous.  *Smock Materials Handling Co., Inc. v. Kerr*, 719 N.E.2d 396, 401 (Ind. Ct. App. 1999).  Generally, the mere fact that an accident occurred does not create an inference of a defect in a products liability case.  *See Smith v. Michigan Beverage Co., Inc.*, 495 F.2d 754, 757 (7th Cir. 1974).

Sharp argues that Plaintiffs have put forth insufficient evidence to prove that the television was defective.  In arguing the contrary, Plaintiffs rely heavily on the cases of *Ford Motor*

*Co. v. Reed*, 689 N.E.2d 751 (Ind. Ct. App. 1997), and *Whitted v. General Motors Corp.*, 58 F.3d 1200 (7th Cir. 1995).   In citing *Reed*, Plaintiffs claim that a plaintiff can prove a product defect by using any of four methods:

> 1.   Plaintiffs may produce an expert to offer direct evidence of a specific manufacturing defect;
>
> 2.   [P]laintiffs may use an expert to circumstantially prove that a specific defect caused the product failure;
>
> 3.   [P]laintiffs may introduce direct evidence from an eyewitness of the malfunction, supported by expert testimony explaining the possible causes of the defective condition; and
>
> 4.   *[P]laintiffs may introduce inferential evidence by negating other possible causes*.

*Reed*, 689 N.E.2d at 753 (emphasis added).   Because the testimony of Plaintiffs' electrical engineering expert has been barred, the first three methods are inapplicable.   However, the fourth method, introducing inferential evidence by negating other possible causes, potentially applies to this case.   There is some confusion as to whether the aforementioned methods of establishing a defect, similar to a *res ipsa* test, are truly applicable to Indiana products liability law.   Thus, the *Reed* and *Whitted* cases must be carefully considered.

The *Reed* standards were set forth by the Indiana trial court as jury instructions, and affirmed by the appellate court.   The *Reed* court noted that this test of proving a defect was taken from

11

*Whitted*, and "[w]hile the test is helpful in ascertaining the existence of a defect under Indiana law," the *Whitted* decision also "indicated some question as to whether the test reflected applicable Indiana law." *Id.* at 753-54.   In *Whitted*, the Seventh Circuit noted that of the jurisdictions that allow theories analogous to *res ipsa loquitur* to prove the existence of a manufacturing defect, those four methods of proof evolved to comprise the test.  *Whitted*, 58 F.3d at 1207.  However, the Seventh Circuit did not directly hold whether the doctrine of *res ipsa loquitur* is applicable to Indiana products liability cases.   It did, however, review *Welge v. Planters Lifesavers Co.*, 17 F.3d 209 (7th Cir. 1994), in which Judge Posner reasoned that the doctrine of *res ipsa loquitur* is not strictly applicable to a products liability case, but it:

> [M]erely instantiates the broader principle, which is as applicable to a products case as to any tort case, that an accident can itself be evidence of liability.  If it is the kind of accident that would not have occurred but for a defect in the product, and if it is reasonably plain that the defect was not introduced after the product was sold, the accident is evidence that the product was defective when sold.

*Whitted*, 58 F.3d at 1208 (quoting *Welge*, 17 F.3d at 211.)

In analyzing *Whitted*, the *Reed* court noted that "*res ipsa* requires that the defendant have control over the instrumentality of harm, while products liability requires that the product leave the defendant's control." *Reed*, 689 N.E.2d at 754.  However, *Reed*

12

acknowledged that *Whitted* concluded "in certain rare instances, circumstantial evidence may produce reasonable inferences upon which a jury may reasonably find that a defendant manufactured a product containing a defect." *Id.* (citing *Whitted*, 58 F.3d at 1208.) The Seventh Circuit concluded that:

> We find that under the Indiana Strict Product Liability Act a plaintiff may use circumstantial evidence to establish that a manufacturing defect existed only when the plaintiff presents evidence by way of expert testimony, by way of negating other reasonably possible causes, or by way of some combination of the two.

*Whitted*, 58 F.3d at 1209.  Following a discussion of *res ipsa loquitur*, which the Indiana courts had previously noted was inappropriate in a situation analogous to products liability, the *Reed* court concluded that:

> Although we agree that products liability and the doctrine or *res ipsa loquitur* are antithetical, the four methods of proof enunciated in *Whitted* are helpful tools in our basic inquiry, which is whether there was sufficient evidence to show that there was a defect.

*Reed*, 689 N.E.2d at 754.

Following the Seventh Circuit in *Whitted* and the Indiana Appellate Court in *Reed*, this Court recognizes the four factors set forth in *Reed* as "helpful tools" in the basic inquiry as to whether there is sufficient evidence of a defect, and recognizes that in some rare circumstances, circumstantial evidence can produce reasonable inferences from which a jury can reasonably find that

the defendant manufactured a product containing a defect. *Reed*, 689 N.E.2d at 754; *Whitted*, 58 F.3d at 1208; *see also Smith v. Ford Motor Co.*, 908 F. Supp. 590, 593 (N.D. Ind. 1995) ("[t]he notion that a plaintiff may use circumstantial evidence to prove a defect in an Indiana products liability case was recently reaffirmed by the Seventh Circuit in *Whitted*"). "By the very nature of fire, its cause must often be proven through a combination of common sense, circumstantial evidence and expert testimony." *Westchester Fire Ins. Co. v. American Wood Fibers, Inc.*, No. 2:03-CV-178-TS, 2006 WL 752584, at *13 (N.D. Ind. Mar. 21, 2006) (quoting *Standard Commercial Tobacco Co., Inc. v. M/V Recife*, 827 F. Supp. 990, 1001 (S.D.N.Y. 1993)). This Court agrees with the writings of the court in *SCM Corp. v. Letterer*, 448 N.E.2d 686 (Ind. Ct. App. 1983):

> The courts would obviously prefer, even in a strict liability case, to have proof of a specific defect causing the harm. But this is not always possible, especially in cases where the product has been destroyed due to its malfunction. Most often the failure to produce the product will have a bearing only on the reliability of the circumstantial evidence of causation. If there is sufficient other evidence that harm was caused by some unspecified defect and no other cause likely, the plaintiff ordinarily has made a submissible cause.

*SCM*, 448 N.E.2d at 691 (quoting 1 Frumer & Friedman, Products Liability § 11.01[3][A], 217).

This case is factually similar to *Reed*, in which the appellate court affirmed the trial court's denial of the defendant

14

manufacturer's motion for judgment on the evidence.  In *Reed*, the plaintiff was injured by a car fire that occurred in his garage. Although the plaintiff's expert testified that the fire started in the car's center console, no witness could pinpoint the identity of the specific defect.  However, the plaintiff "all but eliminate[d] every possibility but a defect in the console." *Reed*, 689 N.E.2d at 755.  The car was owned for only five months, and the expert indicated that the cause of the fire was some type of electrical defect within the center console.  *Id.*  The court found that evidence enough for the jury to conclude that some defect in the console caused the fire.  *Id.*

The evidence in this case is weaker than that in *Reed*, because here, no expert has testified that the television caused the fire, and no expert has pinpointed exactly where the fire started in the television.  Shand admitted that he has no opinion about whether the cause of the fire was the television because he is not qualified to render any opinions about the television.  (Shand Dep., pp. 15, 52, 207-09.)  However, like in *Reed*, Plaintiffs, with the help of Shand, have basically eliminated all other potential causes of the fire.  According to Mary Gaskin's testimony, the television was the only electrical appliance in the room, and the only item plugged into an electrical outlet in the bedroom.  There was no evidence of candles, cigarettes, or ash trays ever found in the room.  Mary Gaskin testified that she saw the television on

15

fire when she entered her mother's room. Shand examined the electrical outlets, overhead light, wall light switch, bed, electrical wiring, and the closet, and concluded that none of those areas were a potential source of the fire.[1]

Sharp criticizes the thoroughness of Shand's elimination of other possible sources, and posits that because the room had been partially cleaned before Shand arrived, there could have been something else in the room that caused the fire. However, "[t]he plaintiff in a products liability suit is not required to exclude every possibility, however fantastic or remote, that the defect which led to the accident was caused by someone other than the defendants." *Smith*, 908 F. Supp. at 596 (quoting *Welge v. Planters Lifesavers Co.*, 17 F.3d 209, 211 (7th Cir. 1994)); *see also Henderson v. W.C. Haas Realty Management*, 561 S.W.2d 382, 386 (Mo. Ct. App. 1977) ("it is not required that the evidence exclude all possibility of another origin or that it be undisputed; it is

_____

[1] In their response, Plaintiffs also rely on the testimony and opinions of David Golden, the fire investigator for the Gary Fire Department, who Plaintiffs claim "qualifies as an expert witness based on both training and experience." (Pl.'s Resp., p. 15.) Sharp argues this reliance on Golden's opinion is misplaced because Plaintiffs never disclosed Golden as an expert pursuant to Federal Rule of Civil Procedure 26(a)(2)(a), and Golden testified that he had no opinion to a reasonable degree of fire forensic certainty that the television caused the fire in this case. (Golden Dep., p. 29.) Because Shand testifies about the origin of the fire and eliminates other potential sources of the fire, this Court was able to rule on the instant motion for summary judgment without considering Golden's testimony; therefore, it does not decide whether Golden's testimony is admissible.

sufficient if all the facts and circumstances in evidence fairly warrant the conclusion that the fire did not originate from some other cause"). As noted by the Court in *Smith*, "[i]f plaintiff were required to disprove every possible eventuality, virtually no products liability action could ever survive summary judgment." *Smith*, 908 F. Supp. at 596.

Viewing the facts in the light most favorable to the nonmovant, as this Court must on summary judgment, it finds that Shand has sufficiently negated other reasonably possible causes, and Plaintiffs have satisfied the fourth method of proving a manufacturing defect as annunciated in *Whitted* and *Reed*. Moreover, in the August 31, 2007 order, this Court noted that Shand's testimony that the fire started just North of the television stand (within several inches) was consistent with the theory that the television started the fire, and that the entertainment center was within the area of fire origin. (August 31, 2007 Order, p. 15.)[2] Plaintiffs have demonstrated that there is a genuine issue of material fact as to whether the television caused the fire, and

---

[2]Even though Shand concluded the lowest level of the fire (typically the origin), was just to the North of the television stand, Shand testified at the April 25, 2007 *Daubert* Hearing before this Court that the burn patterns are consistent with a theory that the television started the fire. The lowest level of the fire, just North of the television stand, could be the result of two different phenomena: (1) a fuel package could have been ignited by the fire that occurred on the wall; or (2) there could have been drop down burning, where something on the television stand fell off and started a secondary fire. (April 25, 2007 Hearing Tr., pp. 59-61; Shand Dep. at 144.)

17

specifically, whether Sharp placed into the stream of commerce a television set that was defectively manufactured.

The parties also dispute whether Plaintiffs have established the second element of the prima facie case of strict liability for a manufacturing defect, which is that the defective condition existed at the time the product left the defendant's control. *Downs*, 685 N.E.2d at 160.  This requirement comes from the IPLA, which explains that "[a] product is in a defective condition under this article if, at the time it is conveyed by the seller to another party, it is in a condition" that renders it "unreasonably dangerous."  Ind. Code. § 34-20-4-1.  Plaintiffs cite to Indiana Code section 34-20-2-1, which provides that a person who puts into the stream of commerce a product in a defective condition is subject to liability for physical harm caused by the product to the consumer if, *inter alia*, "the product is expected to and does reach the user or consumer without substantial alteration in the condition in which the product is sold by the person sought to be held liable under this article."  Ind. Code § 34-20-2-1.  Plaintiffs argue that the only issue is whether there is evidence of substantial alteration.  However, Sharp is correct that substantial alteration is an affirmative defense available to product manufacturers.  *See* Ind. Code § 34-20-6-5; *see also Cornette v. Searjeant Metal Products, Inc.*, 258 N.E.2d 652, 665 (Ind. Ct. App. 1970) ("[a]ny change in the product which would be

of such nature not reasonably foreseeable to the manufacturer and which contributes to the defect which causes injury is a substantial change and would constitute an affirmative defense to the action."). The text of section 34-20-2-1 provides that a "product in a defective condition" must be placed into the stream of commerce – that person is then subject to liability if the product is expected to, and does reach the consumer without substantial alteration. Thus, Plaintiffs have the burden of proving a defective product was placed into the stream of commerce.

The Court believes that Plaintiffs have put forth sufficient evidence to withstand summary judgment. In this case, Plaintiffs have established that the television was only 2 months old at the time of the accident, it was purchased from Best Buy, unwrapped in a pristine condition (and was only used for approximately one month), and that there were no problems with the television before the accident. No one mishandled the television, and it was never repaired for any reason. The evidence in this case is stronger than that in *Whitted*, where the plaintiff did not present enough evidence to establish that defendants retained control over the seat belt at issue, in part because the plaintiff had used the seat belt for six years. *Whitted*, 58 F.3d at 1208. Here, the evidence is sufficient for a reasonable jury to find that the alleged manufacturing defect existed at the time the television left Sharp's control.

Finally, the parties dispute whether Sharp has properly raised the state of the art presumption, and if so, whether Plaintiffs have rebutted the presumption. Indiana Code section 34-20-5-1 states:

> In a product liability action, there is a rebuttable presumption that the product that caused the physical harm was not defective and that the manufacturer or seller of the product was not negligent if, before the sale by the manufacturer, the product:
>
> > (1) was in conformity with the generally recognized state of the art applicable to the safety of the product at the time the product was designed, manufactured, packaged, and labeled; or
> >
> > (2) complied with applicable codes, regulations, or specifications established, adopted, promulgated, or approved by the United Sates or by Indiana, or by an agency of the United States or Indiana.

Ind. Code § 34-20-5-1. The Court declines to decide at this stage of the litigation whether Sharp has properly raised the state of the art presumption. Even assuming, *arguendo*, that Sharp has properly raised the presumption, Plaintiffs have put forth enough evidence of a manufacturing defect that a rational jury could find that the presumption has been overcome.

In sum, although the evidence presented by Plaintiffs is scant, it is sufficient to create a triable issue of fact. Plaintiffs produced enough evidence to raise a material issue of fact that the Sharp television, Model 19 RM 100, caused a fire due

20

to a manufacturing defect.  Sharp has not met its burden of demonstrating that there is an absence of evidence to support Plaintiffs' case, *Celotex* 477 U.S. at 325, therefore, its motion for summary judgment on the issue of manufacturing defect is denied.


CONCLUSION

For the reasons set forth above, Sharp's Motion for Summary Judgment is **GRANTED IN PART** and **DENIED IN PART**.  Defendant's motion for summary judgment is **GRANTED** on the issues of design defect and failure to warn, and the Clerk is **ORDERED** to **DISMISS WITH PREJUDICE** these claims from the complaint.  The motion is **DENIED** on the issue of manufacturing defect, and this claim **REMAINS PENDING**.

DATED: September 26, 2007          /s/ RUDY LOZANO, Judge
                                   United States District Court